IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ *R.g* _____ D.C.

05 OCT -6 PM 3: 4~

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | X | |
| | X | |
| Plaintiff, | X | |
| | X | |
| vs. | X | Cv. No. 02-02799 -*B* |
| | X | Cr. No. 96-20176 |
| STEVEN BRUCE SMITH, | X | |
| | X | |
| Defendant. | X | |
| | X | |

ORDER GRANTING IN-PART AND DENYING IN-PART FIRST MOTION TO AMEND
PENDING MOTION UNDER 28 U.S.C. § 2255
ORDER DENYING SECOND MOTION TO AMEND PENDING MOTION
UNDER 28 U.S.C. § 2255
ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

Defendant Steven Bruce Smith, Bureau of Prisons registration number 15848-076, an inmate at the United States Penitentiary in Marion, Illinois, filed a <u>pro se</u> motion under 28 U.S.C. § 2255 seeking to set aside his sentence for one count of forcible assault upon a federal officer, under 18 U.S.C. § 111, one count of possession of a firearm during a crime of violence, in violation of 18 U.S.C. § 924, and four counts of firearms possession violations pursuant to various provisions of 18 U.S.C. § 922.

On May 20, 1997, a federal grand jury in the Western District of Tennessee returned a seven-count indictment charging Smith with

1

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on **10-7-05**

⑧

the six counts noted above, and one additional count of attempting to kill a federal officer in violation of 18 U.S.C. § 1114.  The charges stemmed from Smith's intentional shooting of a federally deputized Memphis Police Officer, assigned to the United States Drug Enforcement Administration Task Force, who was conducting a protective sweep of Smith's Memphis hotel room incident to the arrest of Smith's mother on an outstanding Nevada warrant.

On November 21, 1997, Smith entered a guilty plea to the assault and firearms possession charges of the indictment, and the government dismissed the attempt to kill a federal officer charge.

On June 30, 1998, then United States District Judge Julia S. Gibbons sentenced Smith to one hundred twenty (120) months imprisonment on the forcible assault charge, sixty-eight (68) consecutive months on two of the grouped together firearms possession charges (being a felon knowingly possessing a firearm and being a fugitive from justice knowingly possessing a firearm) under § 922, sixty (60) concurrent months on the other two grouped together firearms possession charges (receiving a firearm while being under indictment and possessing a firearm with an obliterated serial number) under § 922, and sixty (60) consecutive months on the firearms possession during a crime of violence charge under § 924, with all of the above aggregating for a total term of incarceration of two hundred forty-eight (248) months.  Smith was also sentenced to three years of supervised release, and charged

2

with a six hundred dollar ($600.00) special assessment.

Smith timely appealed his sentence.  On appeal, the Sixth Circuit Court of Appeals ruled that the inmate's sentence was based, in-part, on impermissible double counting due to the sentencing court's enhancement of Smith's § 924 conviction with the specific offense characteristic, under U.S. Sentencing Guidelines Manual § 2K2.1(b)(5), for use of a firearm in connection with another felony.  U.S. v. Smith, 196 F.3d 676 (6th Cir. 1999).  Accordingly, the appellate court remanded for re-sentencing.

On March 10, 2000, the district court re-sentenced defendant, with Judge Gibbons this time imposing an aggregate sentence of two hundred twenty-eight (228) months.  The difference in sentencing resulted only from the district court's imposition of a forty-eight (48) month consecutive sentence on the felon and fugitive in possession of a firearm counts of the indictment under § 922.  Smith's sentences for his other counts of conviction remained the same, though the district court's calculus in reaching the sentence differed.  Because it was prohibited from applying the § 2K2.1(b)(5) "firearms" specific offense characteristic, given the conviction under § 924, the district court reevaluated Smith's sentence as a whole and decided to assess his offense level under § 2.A2.1, the "assault with intent to commit murder" section of the guidelines.  The net result was that, upon re-sentencing, rather than simply reducing Smith's original offense level, thirty-one, by

3

four levels pursuant to the remand, the district court arrived at a new offense level of thirty based on § 2A2.1 and enhancements applied thereunder.   Smith lodged various challenges to the district court's re-sentencing, all of which were rejected on appeal.  See U.S. v. Smith, 27 Fed. Appx. 361 (6th Cir. 2001).  The Petitioner did not seek Supreme Court review of the appellate court's decision.

On October 21, 2002, Smith filed this § 2255 motion, pro se. In his motion, the defendant argues that his counsel was ineffective:

a.   in giving erroneous advice to the defendant concerning the length of imprisonment to which he was subject in choosing to plead guilty;

b.   in failing to properly "explain Rule 11" and the existence and effect of upward departures;

c.   in improperly pressuring defendant to plead guilty;

d.   in deceiving defendant as to the existence of an appeal; and

e.   in failing to argue the inapplicability of the § 5K2.9 enhancement for committing a felony to conceal another felony.

As additional grounds for relief, Smith asserts that the district court erred in applying the § 5K2.9 enhancement and in calculating his criminal history score by adding one point each to the score for two separate criminal acts he committed while a juvenile, pursuant to § 4A1.1(c) of the guidelines.

4

On May 5, 2003, Smith filed a motion to amend his pending §2255 motion ("Motion to Amend I"), seeking to supplement the motion with the additional argument that the district court lacked jurisdiction to impose judgment on "the 18,usc,§1114 and 18,usc,§111 counts." In support of that claim, Smith argues that the officer whom he shot was not a federal official within the meaning of the cited statutes. Additionally, he submits that this argument supports his existing claim for ineffective assistance of counsel, in that, had counsel adequately investigated his case, his attorney would have understood that the district court lacked jurisdiction to enter judgment on the counts referenced above. Finally, Smith cites the Supreme Court's decision in <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985) for further support of his claim, originally presented in his initial § 2255 motion, that counsel improperly induced him to plead guilty.

On June 20, 2005, Smith filed a second motion to amend ("Motion to Amend II"), in which he claims that his Fifth Amendment double jeopardy rights were violated by the district court's upward departure based on his brandishing of a firearm, pursuant to § 5K2.6 of the guidelines, because, he argues, "the discharge and use of a firearm were already taken into account" in his conviction under § 924.

The Court will first address the viability of amending Defendant's § 2255 motion as requested in the two motions. The

mandate of Fed. R. Civ. P. 15(a), that a court freely grant leave to amend when justice so requires, has been interpreted to allow supplementation and clarification of claims initially raised in a timely § 2255 motion.  See Anderson v. U.S., 39 Fed. Appx. 132, 135-136 (6th Cir. 2002).  Section 2255 imposes a one-year limitation on the filing of any motion seeking to amend, vacate, or set aside a federal sentence, which begins to run upon the date when the defendant's sentence becomes final.  Thus, in order for a § 2255 movant to amend a pending motion beyond the one-year limitation, the  requested amendment must "relate back" to the original motion in that it seeks only to clarify or supplement claims timely raised in the original pleading.  To the extent that a motion to amend seeks to raise entirely new claims for relief, it is subject to the one-year limitation for filing a motion attacking the sentence.  Oleson v. U.S., 27 Fed. Appx. 566, 570-71 (6th Cir. 2001).

Under this framework, the Court is compelled to deny in-part and grant in-part Smith's first motion to amend his § 2255 motion. Smith's conviction became final on January 2, 2002, the date marking the expiration of the ninety-day period during which he could have filed a petition for a writ of certiorari with the Supreme Court to review the Sixth Circuit's disposition of his second appeal.  See Clay v. U.S., 537 U.S. 522, 525 (2003).  Smith filed his first motion to amend on May 5, 2003.  His initial claim

in that motion, that the district court lacked jurisdiction to impose a sentence because the officer he shot was not a federal official under the statute, is clearly a new claim not raised in his original petition.  Further, though he also tries to couch this claim in terms of ineffective assistance of counsel, Smith is still presenting a new claim entirely separate and distinct from the ineffective assistance of counsel contentions presented in his original motion.  Thus, because this claim was first presented more than one year after his conviction became final, Smith is barred from presenting it by way of a motion to amend.  Thus, his motion to amend on these grounds is DENIED.  However, also in his first motion to amend, Smith cites additional Supreme Court authority in seeking to supplement or clarify his original claim that counsel improperly induced him to plead guilty.  This portion of the motion to amend clearly relates back to the claim raised in Smith's original motion, and it may therefore be raised by way of amendment.  Accordingly, Smith's first motion to amend is GRANTED only to the extent that it presents additional authority in support of the Petitioner's claim that counsel improperly induced him to plead guilty.

The inmate's second motion to amend seeks to add the double jeopardy claim discussed above.  Smith's insistence that his sentence somehow effected a violation of his Fifth Amendment double jeopardy rights is clearly a new claim which was not timely

presented, in any form, in his original § 2255 motion.  Because the claim was raised more than one year after his conviction became final, he is barred from raising the claim due to the restrictions contained in § 2255.  Therefore, Defendant's second motion to amend his § 2255 motion is DENIED.

The Court will now address the claims raised by Smith in his original § 2255 motion as properly amended.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

In order to demonstrate deficient performance by counsel, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 688.

8

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689. (citation omitted); see also Coe v. Bell, 161 F.3d 320, 342 (6th Cir. 1999)("The specifics of what Coe claims an effective lawyer would have done for him are too voluminous to detail here. They also largely miss the point: just as (or more) important as what the lawyer missed is what he did not miss. That is, we focus on the adequacy or inadequacy of counsel's actual performance, not counsel's (hindsight) potential for improvement."); Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983) ("a defendant 'has not been denied effective assistance by erroneous tactical decisions if, at the time, the decisions would have seemed reasonable to the competent trial attorney'") (citations omitted).

A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness. Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992).

9

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." <u>Strickland</u>, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. <u>Id.</u> at 697.

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> Additionally, however, in analyzing prejudice,

> the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

<u>Lockhart v. Fretwell</u>, 506 U.S. 364, 368 (1993) (citing <u>United States v. Cronic</u>, 466 U.S. 648, 658 (1984)); <u>see also</u> <u>Strickland</u>, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). "Thus analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." <u>Lockhart</u>, 506 U.S. at 369. The Court

will now address each of Smith's claims of ineffectiveness of counsel in turn.

Smith first asserts several claims of ineffectiveness related to counsel's assistance prior to his decision to plead guilty, including: 1) counsel gave erroneous advice concerning the duration of incarceration defendant might receive by pleading guilty; 2) counsel failed to "explain Rule 11" and the existence and effect of upward departures; and 3) counsel improperly pressured defendant to plead guilty. The Court first notes that Smith has failed to satisfy the pleading requirements imposed by Rule 2(b) of the rules applicable to § 2255 motions, which requires that such a motion "state the facts supporting each ground" for relief proffered in the motion. Smith has wholly failed to offer any facts in support of the above contentions. He does not elucidate what representations were allegedly made by his attorney regarding his sentence, nor does he explain how counsel improperly pressured him to plead guilty. Due to his presentation of such conclusory assertions and generalities, Smith has failed to demonstrate a genuine issue of material fact regarding these claims.

Further, as a substantive matter, these claims are without merit. The transcript of Smith's change of plea hearing clearly refutes each of Smith's allegations concerning the voluntariness and intelligence of his plea. Regarding his claim that counsel gave erroneous advice concerning his possible sentence, at his

change of plea hearing Smith was made fully aware of his maximum possible punishment:

> THE COURT: Thus the total aggregate penalties under all counts of this indictment taken together would be the 40 years maximum on Counts 2, 3, 4, 5, 6 and 7, all aggregated together, and then the five years that would be, that could be served under Count 3 consecutive to that, so a total maximum possible sentence in this case of 45 years in prison . . . .
>     Do you understand those penalties?
>
> THE DEFENDANT: Yes.

Transcript of 11/21/1997 Change of Plea Hearing ("Trans."), United States v. Smith, No. 96-20176 at 9. Smith also later affirmed that, whatever promises he now alleges were made by counsel, he understood that the judge enjoyed complete discretion to sentence within the guidelines applicable to him. See Trans. at 15. Smith's sworn testimony at his plea colloquy also refutes his present allegation that his counsel failed to explain Rule 11 and the effect of upward departures. After the Court gave a lengthy explanation of its power to depart from the sentencing guideline range based on "aggravating" or "mitigating" factors in certain circumstances, the Court inquired whether Smith understood that power of the Court:

> THE DEFENDANT: Yeah, I understand that, ma'am.
>
> MS. FERGUSON [Smith's counsel]: I think I discussed this with Mr. Smith, but I used the term upward departure and downward departure, and I think that's what he was more familiar with.
>
> THE COURT: Did you understand those terms when you discussed it with Ms. Ferguson?

> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: You understand it's the same concept?
>
> THE DEFENDANT: Uh-huh.

Trans. at 15.   Thus, it is apparent that, not only had Smith's counsel explained upward departures prior to his change of plea, but that Smith opted to enter the plea with full understanding that such departures might enhance his sentence beyond his guideline range, despite any predictions of his counsel.   Finally, Smith's sworn testimony makes clear that he was not improperly pressured by counsel to enter a plea of guilty:

> THE COURT: Has anyone threatened you or tried to force you in any way to try to plead guilty?
>
> THE DEFENDANT: No, ma'am.

Trans. at 10.   In light of Smith's sworn testimony during his plea colloquy, the vague, self-serving statements made in the instant motion are insufficient to warrant an evidentiary hearing.   Given the government's concession of dropping the most serious count of the indictment, Smith's best interests were clearly served in accepting the plea agreement offered him.   The Court will not now entertain any claim attacking the voluntariness or intelligence of his plea based on ineffective assistance of counsel, where his previous sworn statements make clear that he was fully informed of the import and implications of his decision to enter the plea.

Smith's invocation, by way of amendment to his § 2255 motion, of the Supreme Court's decision in <u>Lockhart</u> does not advance his

cause in this Court.   In that case, the Court held that the Strickland test for ineffective assistance of counsel claims was to be applied to those that attack the voluntariness of a guilty plea. Lockhart, 474 U.S. at 58-59.   Consideration of the case does not illuminate or make clear that Smith's counsel improperly pressured him to plead guilty.   Indeed, Lockhart makes clear that Smith's claim that his plea was involuntary must be dismissed.    As demonstrated above, Smith has failed to show deficient performance by his counsel or prejudice flowing from any alleged deficient performance because he has not shown "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have instead insisted on going to trial." Id.   Accordingly, for all the reasons set forth above, Smith's claims attacking the voluntariness and intelligence of his plea based on ineffective assistance are clearly without merit and are DENIED.

Smith next asserts that counsel "deceived defendant as to the existence of an appeal."   Here, Smith has again failed to satisfy the pleading requirements of Rule 2(b) of the rules governing § 2255 proceedings.    Further, given that Smith's sentence was appealed two separate times, the Court is unable to discern exactly what he is attempting to argue with this contention.   If Smith intends to argue that counsel failed to advise him of other possible grounds for appeal, then he has failed to prove either

deficient performance or prejudice because he does not state what other grounds for appeal existed or how his ultimate sentence would have been different had such an appeal been made. Accordingly this claim is without merit and is DENIED.

Finally, Smith argues that counsel was ineffective for failing to argue that the § 5K2.9 enhancement for criminal purpose was inapplicable in his case. This claim is clearly without merit. Smith does not explain why the enhancement was inapplicable or how counsel might have persuaded the court that the enhancement was inapplicable. Indeed, on appeal the sentencing court's application of the § 5K2.9 enhancement was expressly approved of by the Sixth Circuit. See Smith, 196 F.3d at 687 ("We hold that the district court did not err in applying §§ 5K2.2, 5K2.6, and 5K2.9."). Thus, Smith has failed to show deficient performance or prejudice by counsel in failing to persuade the court that the criminal purpose enhancement was inapplicable. Accordingly, this claim is DENIED.

## II.  THE COURT ERRED IN APPLYING THE § 5K2.9 ENHANCEMENT

Smith argues that the district court erred in enhancing his sentence due to his criminal purpose under § 5K2.9 of the guidelines. The district court's rationale in granting the government's request for an upward departure on this ground was that Smith likely shot the federal officer in an attempt to evade capture on an outstanding arrest warrant for murder in the state of Washington. In support of this allegation of error, Smith merely

15

states that the "shooting of officer HOING did not facilitate or conceal the commission of another offense.  A 5K2.9 is not a prior conviction and therefore is not applicable."

This claim is clearly without basis.  The Court cannot discern any cogent legal argument or supporting facts from the conclusory statement given above.  Further, as discussed above, the Sixth Circuit upheld the district court's application of the criminal purpose enhancement during Smith's sentencing.  Accordingly, this claim of error is DENIED.

**III.   THE COURT ERRED IN CALCULATING DEFENDANT'S CRIMINAL HISTORY**

Smith claims that the Court erred in accepting the finding of his pre-sentence report and enhancing his criminal history score, pursuant to § 4A1.1(c) of the guidelines, one point each for two criminal acts he committed while a juvenile.  The Court first notes that Smith's failure to raise this issue on either of his two appeals precludes the Court from considering the issue in a collateral attack on his sentence.  See Hunter v. United States, 160 F.3d 1109, 1115 (6th Cir. 1998)(finding claim attacking criminal history computation procedurally defaulted because, as a claim of non-constitutional sentencing guideline error, it should have been raised on direct appeal).  However, as a substantive matter this claim is clearly without merit.  Smith does not offer any legal justification in support of this contention, nor does he offer any factual reason why the enhancement under § 4A1.1(c)

16

should be inapplicable to him.   The sentencing guidelines applicable at Smith's sentencing instruct a court to "add 1 point under § 4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense." U.S. Sentencing Guidelines Manual § 4A1.2(d)(2)(B)(1997).   Smith received his two juvenile sentences on December 19, 1991 and January 18, 1994, respectively.   Because the instant offense was carried out on September 17, 1996, his criminal history score was clearly eligible for enhancement by two points in light of the two juvenile sentences.   Therefore, the district court did not err in calculating Smith's criminal history score due to its consideration of his prior juvenile sentences.   Accordingly, this claim of error is DENIED.

For all the reasons given above, Smith has failed to show any infirmity in his sentence and his motion to vacate is therefore DENIED.

Consideration must also be given to issues that may arise if the defendant files a notice of appeal.   Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997)(district

17

judges may issue certificates of appealability under the AEDPA).
No § 2255 movant may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme
court stated that § 2253 is a codification of the standard
announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which
governed the issuance of certificates of probable cause in habeas
cases prior to the AEDPA.

> [P]robable cause requires something more than the absence
> of frivolity . . . [A] certificate of probable cause
> requires petitioner to make a substantial showing of the
> denial of [a] federal right.   [A] question of some
> substance, or a substantial showing of the denial of [a]
> federal right, obviously [does not require] the
> petitioner [to] show that he should prevail on the
> merits. He has already failed in that endeavor. Rather,
> he must demonstrate that the issues are debatable among
> jurists of reason; that a court could resolve the issues
> in a different manner; or that the questions are adequate
> to deserve encouragement to proceed further.

Barefoot, 463 U.S. at 893 (internal quotations and citations
omitted).  Thus, in order to obtain a certificate of appealabilty,
while the prisoner is not required to prove that "some jurists
would grant the petition for habeas corpus," he must demonstrate
that his claim of denial of a federal right is at least debatable
among jurists of reason prior to a full consideration of the case.
Miller-El v. Cockrell, 537 U.S. 322, 338 (2003).

In this case, for the reasons discussed in the body of this
order, the movant's claims are clearly without merit and he cannot
present a question of some substance about which reasonable jurists
could differ.   The Court therefore DENIES a certificate of

appealability.

The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions.  Hereford v. United States, 117 F.3d 949, 951 (6th Cir. 1997); cf. McGore v. Wrigglesworth, 114 F.3d 601, 610 (6th Cir. 1997)(instructing courts regarding proper PLRA procedures in prisoner civil-rights cases).  Rather, to seek leave to appeal in forma pauperis in a § 2255 case, and thereby avoid the $255 filing fee required by 28 U.S.C. §§ 1913 and 1917,[1] the prisoner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure.  Hereford, 117 F.3d at 952.  If the motion is denied, the prisoner may renew the motion in the appellate court.

Rule 24(a) states, in pertinent part, that:

> A party to an action in a district court who desires to proceed on appeal in forma pauperis shall file in the district court a motion for leave to so proceed, together with an affidavit, showing, in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay fees and costs or to give security therefor, the party's belief that that party is entitled to redress, and a statement of the issues which that party intends to present on appeal.

The Rule further requires the district court to certify in writing

---

[1]     The fee for docketing an appeal is $250.  See Judicial Conference Schedule of Fees,  ¶ 1, Note following 28 U.S.C. § 1913.  Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

whether the appeal is taken in good faith.

For the same reasons this Court denies a certificate of appealability, the Court determines that any appeal in this case would not be taken in good faith. It is therefore certified, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by this defendant is not taken in good faith, and he may not proceed on appeal in forma pauperis.

IT IS SO ORDERED this ___6th___ day of October, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 8 in case 2:02-CV-02799 was distributed by fax, mail, or direct printing on October 7, 2005 to the parties listed.

Steven Bruce Smith
USP-MARION
15848-076
PO Box 1000
Marion, IL 62959

Honorable J. Breen
US DISTRICT COURT